## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

Case No. HG 08-00850

TONY D. SMITH and
CLARA L. SMITH,

Debtors.

_____/

## OPINION RE: TRUSTEE'S OBJECTION TO CONFIRMATION
## OF DEBTORS' CHAPTER 13 PLAN

Appearances:

James R. Oppenhuizen, Esq., Grand Rapids, Michigan, attorney for Debtors
Rachel Hillegonds, Esq., Kalamazoo, Michigan, attorney for the Chapter 13 Trustee

The Chapter 13 Trustee has contested confirmation of Troy and Clara Smith's plan. One point of contention is whether the applicable commitment period for that plan should be three years or five years. That determination in turn depends upon how many persons should be treated as members of the Smiths' household. The purpose of this opinion is to give both parties guidance concerning that calculation.

## BACKGROUND[1]

The Smiths do not have any minor children. However, all three of their adult children remain close. Their daughter Erin lives with the Smiths full time along with her minor child. Anthony, their son, still has a room in the Smiths' home and he shares some meals with them. And finally, Jessica

---

[1]The record for purposes of this opinion consists of the briefs filed by both parties and affidavits filed by the Smiths. Both parties also argued the merits of their respective positions at a hearing held on September 11, 2008.

is a college student who lives at school during the academic year but who resides at home during the summer. She also visits on some weekends when she is in school.

Trustee contends that the Smiths' household consists of only Mr. and Mrs. Smith. The Smiths, though, contend that their household also includes at least Erin and their grandchild.

Who is included in the Smiths' household is important because that number determines, among other things, the minimum contribution the Smiths are to make from their income in order to fund their Chapter 13 plan. Specifically, Section 1325(b)(1)(B)[2] requires that if the Chapter 13 trustee or an unsecured creditor insists, a debtor must contribute to his plan all of his "projected disposable income to be received in the applicable commitment period . . . ." Section 1325(b)(4), in turn, provides that the "applicable commitment period" will be only three years if the debtor's annualized "current monthly income" is less than a certain amount but that otherwise the commitment period is to be five years.

The size of the debtor's household dictates the calculation of this amount. 11 U.S.C. § 1325(b)(4)(A)(ii). For example, if the Smiths' household is only two, then the comparison will be between the Smiths' current monthly income, which, when annualized, is $62,652.84, and the "highest median family income" for a family of two in Michigan as reported by the Census Bureau,[3] which is $51,878.00. On the other hand, if the Smiths' household is four, then the comparison will be with the highest median family income for a family of four as reported by the Census Bureau, which is $74,658.00.

---

[2]11 U.S.C. § 1325(b)(1). All further citations in this opinion to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, will be "Section _____."

[3]*See*, 11 U.S.C. §§ 101(39A) and 1325(b)(4)(A)(ii)(II).

## DISCUSSION

"Household" appears throughout the Bankruptcy Code.   It is, for example, used as an adjective to distinguish property based upon either location or purpose.

> (d) The following property may be exempted . . .
> (3)   The debtor's interest, not to exceed $525 in value in any particular item or $10,775 in aggregate value, in **household** furnishings, **household** goods, wearing apparel, appliances, books, animals, crops or musical instruments, that are held primarily for the personal, family, or **household** use of the debtor or a dependent of the debtor.

11 U.S.C. § 522(d)(3) (emphasis added).[4]

"Household" is also used sometimes as a noun to describe a location:

> A [statement of annual income and expenditures] . . . shall disclose—
> (C) the identity of any person who contributed, and the amount contributed, to the **household** in which the debtor resides.

11 U.S.C. § 521(g)(1)(C) (emphasis added).

And finally, "household" is used as a noun at other times to describe a group, as is the case in this instance.

> [I]n the case of a debtor in a **household** of 2, 3, or 4 individuals, the highest median family income of the application State for a family of the same number or fewer individuals; or

11 U.S.C. § 1325(b)(4)(A)(i)(II) (emphasis added).[5]

---

[4]*See also*, 11 U.S.C. §§ 101(8), 101(10A), 101(41A), 365(d)(5), 506(a)(2), 507(a)(7), 522(d)(3), 522(d)(4), 522(f)(1)(b)(i), and 11 U.S.C. § 722.

[5]*See also*, 11 U.S.C. §§ 707(b)(2)(A)(ii)(II), 707(b)(6), 707(b)(7), 1322(d).

Congress for whatever reason chose not to define "household."[6] Consequently, I am obliged to give that word its plain meaning, *See, e.g., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947 (2000) ("[W]hen the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms.") (internal quotation marks omitted); *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004); *Union Bank v. Wolas*, 502 U.S. 151, 158, 112 S.Ct. 527, 531 (1991). Moreover, the presumption is that "household" is to have the same meaning wherever it appears. *Cohen v. de la Cruz*, 523 U.S. 213, 220, 118 S.Ct. 1212, 1217 (1998).

"Household," when used to delineate a group, can have two meanings. First, it may mean simply all of the persons who use a particular structure as their dwelling space.[7] However, it may also involve a familial relationship. That is, a household may mean only those persons who live together and who are also related by blood or marriage.[8]

The Bureau of the Census opts for the former definition. For its purposes, a "household" consists of "all the people who occupy a housing unit."[9] Although the Census Bureau's definition is not controlling, it does have relevance for purposes of interpreting Section 1325(b)(4)(A)(ii) since

---

[6]Section 522(f)(4) does include a definition of "household goods." However, its application is limited to only Section 522(f)(1)(B). Moreover, the definition given is nothing more than a list of items that qualify as a "household good" and a list of items that do not.

[7]"[A] social unit comprised of those living together in the same dwelling place." WEBSTERS Third New International Dictionary (1986) (Unabridged).

[8]"[T]hose who dwell under the same roof and compose a family." *Id.*

[9]U.S. Census Bureau, Current Population Survey (CPS) - Definitions and Explanations (http://www.census.gov/population/www/cps/cpsdef.html).

4

that agency's statistics are to be used to determine the "median family income" also referenced in

that subsection. *See*, 11 U.S.C. § 101(39A).

Moreover, this broader meaning of "household" is supported by that same word's use

elsewhere in the Code.  Consider, for example, Section 707(b)(2)(A)(ii)(II):

> In addition, the debtor's monthly expenses may include, if
> applicable, the continuation of actual expenses paid by the debtor that
> are reasonable and necessary for care and support of an elderly,
> chronically ill, or disabled **household** member or member of the
> debtor's immediate family (including parents, grandparents, siblings,
> children, and grandchildren of the debtor, the dependents of the
> debtor, and the spouse of the debtor in a joint case  who is not a
> dependent) and who is unable to pay for such reasonable and
> necessary expenses.  (Emphasis added).[10]

Although not ironclad, the inference is that household members and family members are to be treated

as two distinct groups under this subsection so as to permit all non-related persons to qualify so long

as they share the same domicile with the debtor and all "non-household" persons, if you will, to also

qualify so long as they are otherwise a member of the debtor's immediate family.

Finally, this broader definition is compatible with how "household" is otherwise used in the

Bankruptcy Code.  Granted, the more restricted definition might also be satisfactory, although the

juxtaposition of "household" with "family" in, for example, Section 522(d)(3) certainly suggests that

a household and a family are two different concepts.  In any event, broadly defining a household as

including all those who reside under the same roof for purposes of Section 1325(b)(4) does not cause

some absurd result somewhere else in the Code.

---

[10]Like Section 1325(b)(4)(A)(ii), Section 707(b)(2)(A)(ii)(II) was also enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and, in fact, Section 707(b) includes two other subsections that are, in part, identical to Section 1325(b)(4)(A).  *See*, 11 U.S.C. §§ 707(b)(6) and (7).

Therefore, I am satisfied that "household" as used in Section 1325(b)(4)(ii) means all persons, related or not, who reside in the same housing unit as does the debtor. What that housing unit may be will vary. It could be a single-family home in one case, a duplex unit in another, or an apartment in yet another. Indeed, it could be as small as a single room were the debtor to live in a hotel or a boarding house.[11]

I agree, then, with the court in *In re Ellringer*, 370 B.R. 905, 910-11 (Bankr. D. Minn. 2007), in its interpretation of "household." On the other hand, I disagree with the court in *In re Jewell*, 365 B.R. 796 (Bankr. S.D. Ohio 2007), which is the other reported case on point. *Jewell* rejected what it characterized as a strict "heads on beds" definition for "household" under related Sections 707(b)(6) and (7) and instead adopted a modified version that also requires consideration of whether the co-resident is being supported by the debtor. Specifically, the test in *Jewell* is whether the debtor had been the source of support for the pertinent household member for the greater part of the six months preceding his petition. *Id.* at 801.

*Jewell*'s reasoning is certainly rational, for the absence of a support element from the headcount under either Section 707(b) or 1325(b) could result in calculations that are "inconsistent with the methodology and purpose of Official Form 22A [the means test]." *Id.* at 800. However, as well founded as *Jewell*'s concern may be, the inconsistency *Jewell* fears does not lead to an absurd result and it is only absurdity that can excuse straying from a statute's otherwise plain meaning.[12]

---

[11]The housing unit could also conceivably be a barracks or a cellblock. Whether the inclusion of such structures causes a problem under the Bankruptcy Code is unclear. In any event, it is not for the courts to stray from what is otherwise the plain meaning of the words chosen by Congress. If an issue remains, then it is for Congress to correct it through further definition.

[12]In most instances, the difference in number resulting from *Ellringer*'s definition of household instead of *Jewell*'s definition should be small. Therefore, the variance itself could seldom

6

*Hartford Underwriters*, 530 U.S. at 6; *Lamie*, 540 U.S. at 534-537. Consequently, I have no choice but to accept the common meaning of "household" and the "heads on beds" approach it engenders. Perhaps at some point in the future Congress itself will adjust the calculus of Section 1325(b)(4) to take into account "financial contribution of the household member, relationship to the debtor, [and] dependency." *Jewell* at 800. However, neither this court nor any other can anticipate that change by making its own adjustments to the enactment in the interim.

## CONCLUSION

Based upon the parties' current submissions, it would appear that Erin and Erin's daughter should be treated as part of the Debtors' household for purposes of Section 1325(b)(4)(A)(ii) and, as such, the applicable commitment period for Debtors is only three years. However, Trustee reserves the right to still offer proofs that neither Erin nor her child actually lives under the same roof as Debtors. Debtors similarly will have the opportunity to present evidence that their household also includes their other two adult children should the need arise.

---

be described as absurd. "Absurd," after all, means "marked by an obvious lack of reason, common sense, proportion or accord with accepted ideas: ridiculously unreasonable, unsound or incongruous." WEBSTER Third New International Dictionary (1986) (Unabridged). Moreover, it is questionable whether that threshold would be reached even in those rare instances when the debtor resides in, for example, an open cellblock or barracks. Granted, *Ellringer*'s definition might result in a number that would warrant being described as absurdly large when compared to the one generated by *Jewell*'s definition. However, the consequence of using that much larger number, as absurd as it might be, is still only the reduction of the debtor's applicable commitment period by two years. Therefore, while it is likely true that the *Ellringer* definition will favor some prisoners and some soldiers over home owners and apartment dwellers, it cannot be said that the favoritism shown would be so great as to be "ridiculously unreasonable, unsound or incongruous."

Nor should either the cellblock or barracks anomaly cause problems elsewhere in the Code. For example, the exemption under Section 522(d)(3) of a prisoner's "household goods" would still be limited to only whatever the prisoner himself had owned as of the commencement of his case even though the household goods described under that subsection ostensibly would include the goods of all other prisoners who also resided in the same cellblock.

7

No order will issue with this opinion. Rather, the parties will continue to prepare for the evidentiary hearing already scheduled in this contested matter for November 21, 2008.

_10/15/08_

Hon. Jeffrey R. Hughes
United States Bankruptcy Judge

Signed this ___15th___ day of October, 2008
at Grand Rapids, Michigan.

8